[No. 13545.  Department One.  March 2, 1917.]

THE STATE OF WASHINGTON, *Respondent*, v. FRANK ADAMS, *Appellant*.[1]

INFANTS — OFFENSES AGAINST — CONTRIBUTING TO DELINQUENCY—STATUTES—CONSTRUCTION.  Keeping in view the beneficent purpose of the juvenile court law, in a prosecution under Rem. Code, § 1987-17, providing that, in all cases where a child "shall be dependent or delinquent," any person who shall "cause" or contribute to the dependency or delinquency shall be guilty of a misdemeanor, it is not necessary to allege that the child was dependent or delinquent prior to the commission of defendant's acts "causing" delinquency, or that the acts charged contributed to a preexisting state or condition of delinquency; especially in view of Id., § 1987-1 defining a dependent child as one who from any cause is in danger of growing up to lead an idle or immoral life.

SAME—OFFENSES AGAINST — CONTRIBUTING TO DELINQUENCY — EVIDENCE—SUFFICIENCY.  The evidence is sufficient to warrant a conviction of causing the dependency of a female child under the age of eighteen years by putting her in danger of leading an immoral life, under Rem. Code, § 1987-17, where it appears that defendants, a married woman 19 years of age and a young man, jointly accused, invited a girl sixteen years of age to a restaurant reputed to be a resort for prostitutes, where they drank beer, and proposed obtaining a room in a hotel in which to spend the night together.

Appeal from a judgment of the superior court for King county, Jurey, J., entered October 6, 1915, upon a trial and conviction of contributing to the dependency of a female child.  Affirmed.

*Wm. R. Bell*, for appellant.

*Alfred H. Lundin, Frank P. Helsell*, and *John D. Carmody*, for respondent.

WEBSTER, J. — Appellant, Frank Adams, was charged jointly with Josie Lytle with the commission of the crime of encouraging, causing, and contributing to the dependency of a female child under the age of eighteen years; and from a judgment of conviction, prosecutes this appeal.

[1]Reported in 163 Pac. 403.

When the state called its first witness, appellant objected to the introduction of any evidence upon the ground that the information failed to state facts sufficient to constitute a crime. The court overruled the objection, and this ruling is assigned for error. The charging part of the information, omitting the name of the prosecutrix, is as follows:

"They, said Josie Lytle and Frank Adams, and each of them, in the county of King, state of Washington, on the 19th day of July, 1915, did then and there wilfully and unlawfully encourage, cause and contribute to the dependency of one . . . a female child of the age of sixteen years, by putting said . . . in danger of growing up to lead an idle, dissolute and immoral life, in this, that said Josie Lytle and Frank Adams, and each of them, did cause and encourage said . . . to resort to a drinking saloon in the city of Seattle and known as 'Overland Cafe' and then and there did cause and encourage said . . . to drink intoxicating liquors, and did then and there encourage and solicit said . . . to resort to a room in a hotel known as the 'Detroit Hotel' in said city of Seattle, with the said Josie Lytle and Frank Adams, and each of them, for immoral purposes."

The applicable provisions of § 17, ch. 160, Laws 1913, p. 531, upon which the information is predicated, reads as follows:

"In all cases where any child shall be dependent or delinquent under the terms of this act, the parent or parents, legal guardian or person having custody of such child, or any other person who shall by any act or omission, encourage, cause or contribute to the dependency or delinquency of such child shall be guilty of a misdemeanor." Rem. Code, § 1987-17.

Appellant insists that, under this statute, the state must allege and prove two elements, namely: (1) That the child in question was impressed with the character of dependency, as defined by the juvenile court law, prior to the commission by the defendant of the acts charged in the information, and; (2) That the acts charged to have been committed by the

defendant contributed to that already existing state or condition of dependency.

The state contends that it is a crime under this statute to be the initial cause of a child's dependency, and that, in such case, it is not necessary either to allege or prove that the child was dependent prior to the commission of the acts with which the accused is charged. It must be conceded that the statute is unfortunately worded, and that a literal and narrow interpretation of the language employed lends support to appellant's view; but, in construing the section, we must not lose sight of the fact that it is a part of the juvenile court law, and the beneficent purposes of that law must constantly be kept in mind.

While the case before us involves a charge of a crime, and the statute is to be construed with all the strictness of a criminal law, yet, in arriving at a proper construction, we are not required to close our eyes to the broad underlying policy and the dominant purpose of the whole law of which the section under consideration is a part. It should require cogent and compelling reasons to induce us to convict the legislature of enacting a law for the protection of children after they have reached a state of dependency or delinquency as defined by the act, but of wholly neglecting to provide protection for children who have not reached that state or condition. To sustain appellant's contention, it would be necessary to hold that the legislature, by the enactment under consideration, had made it criminal for one to commit an act or series of acts which would contribute toward making a bad child worse, but that it did not make punishable the same act or acts when they caused a good child to become bad.

It is inconceivable that the legislature intended, by § 17, to render dispunishable one who causes a female juvenile to depart from the path of rectitude and virtue, but intended to make it criminal for one subsequently to contribute to the continuance of the deplorable condition of the child

which had been brought about by the initial wrongful act. To so construe the section would be to read out of it the word "cause," which is perhaps the strongest word in the section. If the state of dependency of the child must exist prior to the commission of the acts with which the defendant is charged, how can such acts be said to cause that dependency? It is difficult to conceive how a subsequent act can be the cause of a preexisting condition. It seems clear to us from the language of the section, viewed in the light of the wholesome and beneficent purpose of the whole enactment, that it was the intention of the legislature to place before the children of the state a strong shield of protection by declaring that no one shall do any act which shall place a child in danger of growing up to lead an idle, dissolute or immoral life, or who shall cause or encourage a child to do any act the commission of which would render the child either dependent or delinquent as defined by the act.

It is not so much the purpose of Rem. Code, § 1987-17, to punish crime as it is to protect children, and it is manifest that its purpose is to prevent children from becoming delinquent or dependent as well as to assist in reclaiming children after they have reached that condition. The fundamental idea of the juvenile court law is to protect children and to prevent them from becoming impressed with the character of dependency or delinquency. It is not a statute of reform, but a statute of prevention. *In re Lundy*, 82 Wash. 148, 143 Pac. 885, Ann. Cas. 1916E 1007.

It would seem monstrous to hold, in the absence of compelling and controlling reasons, that, notwithstanding the fundamental idea upon which the law is based, the legislature intended that the hand of the criminal law should be palsied against preventing dependency or delinquency, but that it should be strong and vigorous in reforming or reclaiming children by removing them from a state of dependency or delinquency into which they had already fallen.

The legislature did not intend to put a premium on leading virtuous girls astray. Subdivision 16 of § 1 of ch. 160, p. 520, Laws of 1913 (Rem. Code, § 1987-1) defines a dependent child as being one who from any cause is in danger of growing up to lead an idle, dissolute or immoral life. A child may be dependent, under the definition of this subdivision, and yet be neither immoral nor dissolute. A child may be greatly in danger of growing up to lead an immoral or dissolute life and still be both moral and virtuous. Consequently § 17 is leveled against the doing of any act which exposes the child to that danger, whether it actually results in leading the child into idleness, immorality or vice, or not.

We are of the opinion, therefore, that this section is twofold in its operation: First, to make criminal the commission of any act which encourages, causes, or contributes to causing a child to become dependent or delinquent as defined by law; and second, that it renders punishable any act which encourages, causes, or contributes to the continuance of a state or condition of dependency or delinquency which already exists. It is just as much a violation of the statute, and, indeed, a much greater moral wrong, to be the author of a child's dependency or delinquency as it is to encourage or contribute to the continuance of a preexisting condition of dependency or delinquency.

Therefore, where the charge is that of originally causing and bringing about a state of dependency or delinquency of a child, it is not necessary either to allege or prove that the child in question was dependent or was a juvenile delinquent person prior to the commission of the acts with which the accused is charged. We are convinced that this conclusion is not only in keeping with the letter and spirit of the law, but that it is based upon the plainest principles of morality and common sense. It is also the rule which we conceive to be sustained by the weight of authority. *In re Goldsworthy,* 22 Cal. App. 354, 134 Pac. 352; *State v. Drury,* 25 Idaho

787, 139 Pac. 1129; *State v. Dunn,* 53 Ore. 304, 99 Pac. 278, 100 Pac. 258.

Appellant cites and relies upon the case of *State v. Williams,* 73 Wash. 678, 132 Pac. 415. In that case the state alleged that the delinquency of the child existed prior to the commission of the acts charged in the information, and the offense charged was that of contributing to the continuance of the state of delinquency which already existed. Therefore, it became necessary for the state to prove the prior delinquency as alleged. It does not hold that a person cannot be charged under the same statute with the crime of causing a child to become dependent or delinquent in the first instance.

It is next assigned for error that the evidence is insufficient to support the verdict. Appellant's argument in support of this assignment is based largely upon the idea that a prior state of dependency of the prosecutrix was not proved, and this view, we have already said, is unsound.

The testimony was conflicting, but the jury was warranted in finding from the evidence that the prosecutrix was of the age of 16 years, and resided with her parents in the city of Seattle. On the evening of July 19, 1915, she, in company with Josie Lytle, a married woman of the age of 19 years, went from the home of the prosecutrix to an ice cream parlor in the downtown district of the city. Later in the evening they went to the Overland cafe, a restaurant situated near the corner of Main street and Second avenue south, and, after remaining there a short time, they walked past the Union station as far as King street, where they first saw Adams, with whom Josie Lytle was acquainted. The prosecutrix was then introduced to Adams by Josie Lytle. It was finally suggested by one of the party—the record does not disclose which one—that they return to the Overland cafe, where Adams was employed, and have something to eat. With their supper they drank beer, which Adams went out and procured from a nearby saloon. They occupied a box with curtains at the entrance. This was about eight o'clock

in the evening, and later they attended a public dance at the Dreamland rink, where they remained for about half an hour as spectators. While there, Josie Lytle asked the prosecutrix if she wanted to stay down town all night and if she objected to "all three of them sleeping in the same bed." To which the prosecutrix made no answer. They then returned to the Overland cafe, where they sat at one of the tables until 11 o'clock, when they accompanied one of the proprietors of the cafe to the Union station. They then returned to the cafe, where the appellant told prosecutrix and Josie Lytle that the night clerk at the Detroit hotel came on duty at midnight; that he was acquainted with the night clerk and could get a room for the night. While they were awaiting the arrival of the night clerk, a policeman, who was acquainted with the prosecutrix, and who had followed the party on their return from the Union station the second time, went into the cafe and found the party sitting in a booth engaged in conversation. The curtains were closed across the entrance to the booth and there were three glasses on the table. The Oakland cafe was reputed to be a place where prostitutes resorted, and was situated in a part of the city largely occupied by Chinese and Japanese stores and gambling houses. The policeman, after questioning the prosecutrix, took her to the police station and placed her in the custody of the matron of the juvenile department.

Upon these facts, and the natural and reasonable inferences to which they give rise, the jury was warranted in finding that the appellant was guilty of causing the prosecutrix to become dependent by exposing her to imminent danger of growing up to lead an idle, dissolute and immoral life, and this question was fairly submitted to the jury under proper instructions.

Affirmed.

ELLIS, C. J., CHADWICK, MORRIS, and MAIN, JJ., concur.