THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ISADORE L. GOLDBERG, Plaintiff in Error.

*Opinion filed October 22, 1927—Rehearing denied Dec. 8, 1927.*

1. CRIMINAL LAW—*when larceny is not proved beyond reasonable doubt.* Larceny by the defendant of property belonging to the State is not proved beyond a reasonable doubt where conviction rests solely on the uncorroborated testimony of alleged accomplices, who were State employees in charge of the property and whose testimony was obtained under promise of immunity, where there is no proof that the property was ever received by the defendant, the accomplices testifying merely that they shipped the property to the defendant as their confederate in the crime.

2. SAME—*act constituting different offenses may be charged in separate indictments.* A person may by one act commit several offenses and may be charged in separate indictments with the several offenses, and an acquittal or conviction of one offense will not be a bar to prosecution for another.

3. SAME—*when a defendant is properly charged with larceny and not larceny as bailee.* The taking of State property by employees having the custody of the property will constitute larceny, and a defendant charged with having taken such property as a confederate of said employees is properly charged with larceny at common law and not larceny as bailee.

WRIT OF ERROR to the Circuit Court of Randolph county; the Hon. J. F. GILLHAM, Judge, presiding.

THOMAS J. ROWE, JR., HENRY ROWE, and J. FRED GILSTER, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, WILLIAM H. SCHUWERK, State's Attorney, and VIRGIL L. BLANDING, for the People.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

At the March term, 1925, of the Randolph county circuit court plaintiff in error, Isadore L. Goldberg, was charged, in an indictment containing two counts, with larceny and receiving stolen property. At the September term, 1925, of said court a second indictment was returned against him which contained six counts, the first and second being identical with the two counts of the earlier indictment and the other four counts charging, each in different language, conspiracy to commit larceny. There was a demurrer to the second indictment, which was sustained as to counts 1, 2, 4 and 6, and the State was required to elect upon which of the remaining counts it would proceed to trial. The State elected to proceed to trial on the third count of the indictment, which charged plaintiff in error with conspiring with his co-defendants to steal the goods and chattels described in the first indictment and in the first and second counts of the second indictment. There was a mis-trial, and the record under the second indictment stood in this condition when plaintiff in error was placed on trial on the first indictment. On the second trial he was convicted of larceny, and he prosecutes this writ of error to review the judgment.

Plaintiff in error is the proprietor of the Goldberg Supply Company and has been in business at Fifteenth and

327—27

Olive streets, in the city of St. Louis, Missouri, for the past twenty years. He is forty-five years old and lives at 35 Lewis place, St. Louis, with his wife. About April 1, 1924, in response to an advertisement, he went to the Southern Illinois Penitentiary, at Menard, to bid on some scrap cloth and waste paper. At the prison he talked with Thomas M. Gore, chief clerk, and William G. Foehr, superintendent of the clothing factory. It was after five o'clock when they finished their conversation, and plaintiff in error remained over night at the prison, occupying a room with Gore. About three weeks later a loaded car was delivered to the Wabash, Chester and Western Railroad Company by the prison authorities consigned to the Goldberg Supply Company in St. Louis. The car was loaded during the afternoon and moved out of the prison yard after five o'clock in the evening, April 19, 1924. The car was weighed in East St. Louis during the evening of April 23. It was not sealed when placed on the siding near the river at Menard on the evening of April 19, and it remained there in that condition that night and perhaps longer. It was received in St. Louis April 26, the Goldberg Supply Company was notified, and one of its drivers unloaded the car and hauled the goods away in a small truck. An invoice of the shipment was sent to the Goldberg Supply Company by the chief clerk of the Southern Illinois Penitentiary. It shows that the car contained twelve cases, containing 4640 pounds of new white rags, at five cents a pound, $232; 6460 pounds of mixed rags in bags, at three cents a pound, $193.80; eight and one-half tons of baled paper, $68; crating and boxing, $7; total, $500.80. The invoice and the freight bill were paid by checks of the Goldberg Supply Company. There is no controversy about any of the foregoing facts.

Foehr testified that he first met plaintiff in error when he was called to the front office at the prison about the first of April, 1924, and directed to show him the scrap which

was being offered for sale; that he took plaintiff in error to the warehouse, where they met Wesley Blair, a convict who was serving as a clerk; that while they were examining the scrap plaintiff in error proposed that the employees of the prison include in his shipment some of the new stock with the scrap and that he would pay them well for whatever they included; that he took plaintiff in error to Gore, and did not see him after that until he called on him in St. Louis, about the first of May; that a car was loaded in the latter part of April and ten or twelve cases of new stock were put into it with the rags; that the car was billed to the Goldberg Supply Company, and that he called on plaintiff in error in St. Louis a short time afterwards and received from him $100 in cash; that about six weeks later he received by registered mail an envelope from plaintiff in error which contained $700.

Gore testified that he was introduced to plaintiff in error by Foehr about 5:30 P. M. on the day plaintiff in error called at the prison to look at the scrap which they had for sale; that there was a car-load of rags on the premises, but he refused to let plaintiff in error have these because they had been promised to another person; that plaintiff in error suggested that they include in the car to be shipped to him later some of the new stock and that he would dispose of the stock and divide the profits; that he invited plaintiff in error to remain over night with him and that they talked about the matter further; that he finally consented to the plan and subsequently included new stock in the car which he shipped to the Goldberg Supply Company; that he called on plaintiff in error in St. Louis about the first of July and asked him for some money; that plaintiff in error replied that he had sent Foehr about $1700, all told, and that he would not give them any more.

Blair testified that he had been in the penitentiary for more than seven years, serving a sentence for forgery; that in April, 1924, he was serving as a clerk in the tailor shop

and met plaintiff in error when he came to the shop with Foehr; that plaintiff in error proposed that they include some of the new stock with the shipment of rags to be consigned to him and that he would make a fair division of profits with them; that he later received $100 cash through Robert W. Glasgow, the assistant superintendent of the tailor shop; that the rags which were loaded in the car consigned to the Goldberg Supply Company were placed in bags; that the woolens, shirtings, linings and thread which were included in the shipment were packed in boxes; that the new stock placed in the shipment included 104 bolts of woolen suiting, 200 bolts of percale shirting, 1000 yards of hickory shirting, 1100 yards of overcoat sleeve-lining and 600 spools of cotton thread; that the value of the new stock included was about $12,000, and that it was the property of the State of Illinois.

Plaintiff in error testified in his own behalf. He denied proposing to Foehr, Gore and Blair that they include new stock in the shipment to him. He denied receiving any of the new stock which these men testified they placed in the car of scrap consigned to the Goldberg Supply Company. He denied giving any money to Foehr or sending any to him by mail. He denied having a conversation with Foehr or with Gore in St. Louis, and stated that he had never seen or talked with them at any time or place except when he called at the penitentiary the first of April to bid on the scrap cloth and waste paper for which the prison authorities had advertised for bids.

Charles Rogers, who is in the transfer business in East St. Louis and has been in such business for twenty-five years, Frank L. Magoon, a physician and a member of the board of police commissioners of St. Louis, Missouri, and Moses Hartmann, for eight years a judge of the circuit court of the city of St. Louis, all testified that they had known plaintiff in errror for more than fifteen years and that they knew his general reputation for honesty among

the people with whom he lived and associated and that it was good.

There is no direct proof in the record that plaintiff in error received any of the new stock which Foehr, Gore and Blair testified was included in the shipment to plaintiff in error. None of it was found in his possession nor does the record show that any of it was ever located. There is no corroboration of the testimony of Foehr, Gore and Blair that new goods were taken from the stock at the penitentiary or that it was placed in the shipment to plaintiff in error. Undoubtedly there was a shortage in the accounts of the Southern Illinois Penitentiary, but whether the money appropriated for the purpose was stolen or whether the goods purchased with the money were stolen depends entirely on the testimony of the three confessed thieves. The bill of lading was regular on its face and corresponded with the invoice which was sent to the Goldberg Supply Company. Foehr testifies that the car was loaded by a gang of prisoners from the quarry and Blair says that about thirty men assisted in the loading. Foehr says that the bill of lading showed the true weight of the contents of the car but that there was no baled paper included in the load. The record shows that the car was received at St. Louis in due course and was unloaded by an employee of plaintiff in error without any attempt to conceal its contents. There is not the slightest corroboration in the record of the testimony of the confessed thieves, each of whom testifies that he was promised immunity from prosecution by the warden of the penitentiary if he would testify against plaintiff in error, and as an additional inducement for his testimony Blair was promised a parole. Every circumstance in connection with the transaction contradicts the story told by the witnesses whose testimony has been purchased with a promise of immunity. Their statement that plaintiff in error, a total stranger, came to them and made his proposition openly and boldly to employees and prison-

ers is so unreasonable as to challenge credulity. As the record now stands we cannot hold that the guilt of plaintiff in error is proven beyond a reasonable doubt.

There are a number of objections to the instructions, but there are only two questions likely to arise on another trial. The first is that challenging the jurisdiction of the court to try the defendant under the first indictment after there had been a trial under a conspiracy count of the second indictment, the count charging larceny having gone out on demurrer. Plaintiff in error cites no authority in support of his proposition, and, in fact, his point is not made clear by argument. The question was not raised when the case was called for trial, and we are not able to find an assignment of error based on the record which presents the question squarely. A similar contention was made in *People* v. *Nall,* 242 Ill. 284, and was held to be without merit. A person by one act may commit several offenses, and there is no objection to charging him in separate indictments with these several offenses. An acquittal or conviction of one will not be a bar to prosecution for another. *Nagel* v. *People,* 229 Ill. 598; *People* v. *Andrae,* 305 id. 530.

The second contention is, that the evidence shows that the crime committed is larceny as bailee and not larceny as at common law. This contention is likewise without merit. The employees of the State merely had custody of the stock of goods in the warehouse, and a taking of them by these employees and their confederates would constitute larceny. *Johnson* v. *People,* 113 Ill. 99; *Aldrich* v. *People,* 224 id. 622.

The judgment is reversed and the cause is remanded to the circuit court of Randolph county.

*Reversed and remanded.*