## WALTER LAVOY WALLIN v. STATE.

No. A-10623.    March 12, 1947.

Rehearing Denied    April 30, 1947.

(182 P. 2d 788.)

Robert R. Rittenhouse, of Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

BRETT, J. The defendant, Walter Lavoy Wallin, was charged by information in the court of common pleas of Oklahoma county, Okla., with the crime of contributing to the delinquency of a minor, in words substantially as follows, to wit:

"* * * contributing to the delinquency of a minor in manner and form as follows: That is to say, the said defendant in the County and State aforesaid, and on the day

and year aforesaid, then and there being, knowingly and willfully cause, aid; abet and encourage one Nancy King, a female under the age of eighteen years, to wit, of the age of nine years, to become a delinquent child, in manner and form as follows: That is to say, the said defendant did wilfully, lewdly, and lasciviously, in such manner as to be offensive to decency and calculated to excite vicious and lewd thoughts to the said Nancy King, by calling the said Nancy King to his car and exposing his privates, with the willful and unlawful intent to excite vicious or lewd thoughts in the mind of said Nancy King."

The information was filed on November 15, 1944, and to which the defendant entered a plea of not guilty.

Thereafter, the defendant was permitted by the court to withdraw his plea of not guilty for the purpose of filing a demurrer to the information. Upon presentation thereof, the demurrer was overruled, and thereupon, the defendant again entered his plea of not guilty. On December 18, 1944, the cause came on for trial, at which time the defendant withdrew his plea of not guilty and entered his plea of guilty to the crime charged in the information. Sentence was deferred until December 21, 1944. On the 19th day of December, 1944, the defendant filed his motion for a new trial as well as a motion in arrest of judgment. The motion for new trial, in substance, alleged the insufficiency of the information to charge an offense, and, if it did charge an offense, it showed on its face the defendant, if guilty would be guilty of indecent exposure, a felony, and not the misdemeanor alleged, of contributing to the delinquency of a minor.

The motion in arrest of judgment, in substance, suggested that at the time the defendant committed the alleged offense and at the time of the filing of motion in arrest of judgment, said defendant was of such unsound

mind that he could not be legally held for the commission of the offense charged in the information; that he was so mentally deranged that he does not know and cannot ascertain the difference between the rightfulness and wrongfulness of his acts, and particularly of the acts contained in the information. The suggestion was made that an inquiry be made upon the sanity of the defendant.

Thereafter, and on the 21st day of December, 1944, both the motion for new trial and the motion in arrest of judgment, after a hearing, were overruled by the court, from which ruling this appeal was perfected. On this record, the defendant makes two contentions:

First. That the court of common pleas of Oklahoma county was without jurisdiction over the person of this defendant or the subject matter of said action for the reason that the information filed herein purports to charge the defendant with a misdemeanor under the laws of the State of Oklahoma, and said court has no jurisdiction to try, hear, or determine the issues in a criminal prosecution where the facts alleged make out a felony.

Second. That it was error for the court to overrule the motion in arrest of judgment and refuse to the defendant a trial by jury to determine the sanity of said defendant at the time of passing judgment and sentence upon said defendant.

This case is one of first impression and therefore of more than ordinary importance, in the interpretation of the juvenile statutes.

In his first assignment, the defendant contends that the charging part of the information is insufficient to bring him within sections 856, and 857, Title 21 O. S. 1941, which sections define contributing to the delinquency

of a minor. The pertinent portion of section 856 is as follows:

"Every person who shall knowingly or willfully cause, aid, abet, or encourage a minor to be * * * or to become a delinquent child, * * * shall, for the first offense, be guilty of a misdemeanor. * * *"

§ 857, the pertinent part thereof, reads as follows:

Subd. 1. " 'Every person,' as used in this Act, shall include human beings, without regard to their legal or natural relationship to such minor, * * *."

Subd. 2. " 'Minor' or 'Child,' as used in this Act, shall include male or female persons who shall not have arrived at the age of eighteen (18) years * * *."

Subd. 3. " 'Encourage,' as used in this Act, in addition to the usual meaning of the word * * *."

The defendant contends that the information does not charge an offense within the foregoing statutes, but it charges the defendant with an offense defined under the provisions of § 1021 of Title 21 O. S. 1941, to wit, indecent exposure—the pertinent portion of which reads as follows: Every person who willfully and lewdly either:

"First. Exposes his person, or private parts thereof, in any public place, or in any place where there are present other persons to be offended or annoyed thereby * * * is guilty of a felony and upon conviction therefor shall be punished, * * * etc."

It is true, the facts pleaded in the information would support a case of indecent exposure, a felony. This fact, however, will not bar the state from charging a misdemeanor if the facts upon which the case is based are within the statutes defining a misdemeanor.

We are of the opinion that the charge in the information is well grounded. This conclusion is based upon the

wording of sections 856 and 857, Title 21 O. S. 1941, and the evil at which the statute is directed; the usual meaning of the terms of the statutes as well as the object of its protection. § 856 reads in part as follows:

"Every person who shall knowingly or willfully * * * encourage a minor to be * * * or to become a delinquent child, * * * shall * * * be guilty of a misdemeanor * * *."

§ 857 reads in part:

" 'Encourage,' * * * in addition to the usual meaning of the word, * * *."

We must therefore look to the usual meaning of the word "encourage," since the statute, as applied to the facts in this instance, must be construed upon the usual and not the special meaning which has been given to it in subsequent, definitive portions of the statute. Webster's New International Dictionary defines "encourage," among other meanings, as follows: "to foster, to animate, to incite, to embolden, to stimulate, to promote, to instigate, to advance," etc. Hence, under the statute, any willful suggestion, act, or course of conduct on the part of a person, knowingly committed, which would tend to foster, animate, incite, stimulate, embolden, instigate, promote, or tend to advance a child to become a juvenile delinquent, is within the statute. Clearly, the act complained of in the information herein comes within the definition of "encourage." What was done would tend to incite, to advance, and to suggest evil and degrading sex thoughts in the mind of the child before whom the exposure was committed. Certainly the act would not advance the juvenile mind to goodness, but, on the contrary, to immorality. Most assuredly, it would tend to corrupt the child's mind and contribute in some measure to lewd and lascivious thoughts and conduct on her part. In any event, it leaves

the impression of the exposure on the juvenile mind, which certainly opens the avenue that may lead to delinquency. At these possibilities, the statute is directly aimed. The conduct herein complained of was clearly within the definition of "encouraging and contributing to juvenile delinquency." We believe the plain meaning of these statutes is sufficiently broad to encompass the facts alleged, even though the defendant could have been charged with the commission of a felony for "indecent exposure" had the prosecutor elected so to do.

The statutes of the State of Illinois are similar to the statutes of Oklahoma. The foregoing conclusion is supported by People v. Friedrich, 385 Ill. 175, 52 N. E. 2d 120; also People v. Gruhl, 320 Ill. App. 489, 51 N. E. 2d 615, appealed to the Supreme Court of Illinois, 388 Ill. 52, 57 N. E. 2d 371, 372, wherein the Supreme Court of Illinois said:

"The argument that the information is insufficient to sustain a conviction for contributing to the delinquency of a child because it, at most, alleged the crime of 'indecent exposure,' is without merit. A single act may constitute a violation of more statutes than one. People v. Goldberg, 327 Ill. 416, 158 N. E. 680; People v. Singer, 288 Ill. 113, 123 N. E. 327."

The fact that the prosecutor may have elected to charge the defendant with a lesser instead of a greater offense does not invalidate the information where the charge, based on the facts, might have been laid under either the lesser or greater statute. The prosecutor, in many instances, has the right of election.

In construing this act, we must keep in mind that the purpose of the juvenile delinquency statutes is to protect the youth of the state from those evil and designing per-

sons who would lead them astray. We are not inclined in the slightest to impair the usefulness and strength of these statutes by placing upon them a narrow, limited, and strict construction. In this connection, see People v. Cohen, 62 Cal. App. 521, 217 P. 78; also, People v. Kinser, 99 Cal. App. 778, 279 P. 488, 490, wherein the court said that the provisions of the juvenile delinquency acts "* * * are intended to be preventative and protective * * *." Also, State v. Adams, 95 Wash. 189, 163 P. 403, 405, wherein the court said:

"It seems clear to us from the language of the section, viewed in the light of the wholesome and beneficent purpose of the whole enactment, that it was the intention of the Legislature to place before the children of the state a strong shield of protection.

"* * * The fundamental idea of the juvenile court law is to protect children, and to prevent them from becoming impressed with the character of dependency or delinquency. It is not a statute of reform, but a statute of prevention. In re Lundy, 82 Wash. 148, 143 P. 885, Ann. Cas. 1916E, 1007."

Placing this interpretation upon the juvenile delinquency statutes of the State of Oklahoma, we are therefore of the opinion that the acts complained of in the information are clearly within the statutes and within the definition of "encourage" and that the charge in the information is well grounded.

Such protective statutes should be liberally construed. A liberal interpretation of the juvenile delinquency statutes arms the state with a two-edged sword, to protect children not delinquent from the suggestions of delinquency, as well as for the punishment of those who might commit such acts as to a child already delinquent. In this connection, it is not necessary that delinquency result from

the acts tending to contribute to delinquency. As was said in People v. Gruhl, supra:

"A child who is the subject of the crime of contributing to the delinquency of a child need not be or become a delinquent child, but the crime is complete when acts are committed which directly tend to render the child delinquent."

See, also, State v. Harris, 105 W. Va. 165, 141 S. E. 637; also, People v. Cohen, supra; also, State v. Adams, supra; State v. Johnson (Mo. App.) 145 S. W. 2d 468; People v. Kinser, supra; also, People v. Hemma, 94 Cal. App. 25, 270 P. 457. We therefore find no merit in the defendant's contentions as to the insufficiency of the information.

The defendant's final contention is that the court erred in failing to grant him a jury trial to inquire into the sanity of the defendant, prior to the pronouncement of judgment and sentence. This contention is wholly inconsistent with the defendant's plea of guilty entered the day before he filed his motion in arrest of judgment. The record fails to disclose even the slightest suggestion of insanity at any time prior to the plea of guilty and before the motion in arrest of judgment was filed. This motion in arrest of judgment, however, suggested insanity both at the time of the commission of the offense and at the time of filing the motion in arrest of judgment. Of course, the matter of insanity at the time of committing the offense was a matter of defense which might have availed the defendant, had it been raised at the proper time. But, the motion herein, standing without any verification, not even by the attorney who prepared the motion, was clearly insufficient under the circumstances herein involved, to raise a doubt in the court's mind. However, the court proceeded to hear evidence upon this issue to determine

whether or not the suggestion was well founded. The record discloses that on the offer of proof, the defendant wholly failed to make out a case which would raise a doubt in the mind of the court as to the legal insanity of the defendant either at the time of the commission of the offense or at the time of filing the motion in arrest of judgment and the hearing thereon.

Two witnesses were called in support of the defendant's motion in arrest of judgment: The defendant's mother and Doctor C. W. Harper. The defendant's mother, on cross-examination, testified that the defendant told her that, "he knew it was wrong but he couldn't keep from doing it." Doctor C. W. Harper, testifying on behalf of the defendant, on cross-examination in response to the following questions, gave the following answers:

"Q. In questioning him, he recognizes that that is bad and wrong to do in the presence of little girls, doesn't he, Doctor? A. Sure. Q. And he knows it is wrong and realizes it and wants to refrain from doing these things? A. That's right. Q. You do know that all the time you are talking to him and questioning him, he recognizes that that act is wrong? A. Yes. Q. And indecent and immoral? A. Yes."

Had the question been raised, before the plea of guilty, as to the insanity of the defendant at the time of the commission of the offense, this testimony of Doctor Harper would have been sufficient to conclude the inquiry on that issue.

As to the plea of insanity at the time of filing the motion in arrest of judgment and hearing thereon, Doctor Harper testified as follows:

"Q. What day did you examine the defendant? A. The 18th, after the trial the other day, for treatment of

his headaches. Q. The 18th. This is the 21st. Would you say that the defendant is sane or has a tendency to be insane at this time? A. Well, he is rational now, I think."

Moreover, Doctor Harper testified that though he had treated the boy off and on up to and including the 18th, he had never concluded from his observation and examination of the defendant that the defendant was insane and that he never questioned the boy's sanity until the charge herein was made. None of the witnesses, testifying in behalf of the defendant and none of the supporting evidence in the form of doctors' reports, brought the defendant within the definition of legal insanity. The proof failed to establish legal insanity either at the time of the commission of the offense (belatedly raised herein), or at the time the motion in arrest of judgment was filed and the hearing thereon was had. The record wholly fails to bring the defendant within the rules laid down in Bingham v. State, decided by Judge Jones, of this court, on June 23, 1946, and found in 82 Okla. Cr. 5, 165 P. 2d 646, 654, the latest and correct pronouncement of the law upon this question. We believe it would not have been an abuse of discretion for the court to have ignored the unverified motion, under the circumstances, since he had a right to look to the source of the information and rely on his observation of the defendant, "and come to a proper conclusion from all of the facts and circumstances," in determining, "whether there is a doubt in his mind as to the sanity of the defendant," Bingham v. State, supra. We find the court, acting wisely and in a precautionary manner, heard the proof on the issue of insanity, both at the time of the commission of the offense and in praesenti. The proof of insanity at the time of committing the offense, as a defense, was waived by the defendant by the plea of guilty. The proof of present insanity was the only issue rightfully raised in this

record by the motion in arrest of judgment. But, the evi-· dence of insanity in prasenti and at the time of the offense was insufficient to raise even a shadow of doubt in the court's mind as to either issue.

The record appears to bring the case, as to insanity, within this statement from the Bingham case, supra, as follows, to wit:

"In other words, there must exist reasons to believe that the claim of insanity, made on behalf of the accused is genuine and not simulated as a means of defeating or delaying the law's penalties in cases where all other means of evading punishment would seem hopeless."

It appears from the record and the evidence therein contained that the plea of insanity herein was not well founded. We therefore are of the opinion that the court did not abuse its discretion in refusing to grant a jury trial on the question of the defendant's insanity. We think the court's conduct in this instance was not arbitrary but was wise and judicious.

Finding the defendant's contentions without merit and no error appearing in the record, the judgment and sentence of the trial court is affirmed.

BAREFOOT, P. J., and JONES, J., concur.