Felix FESMIRE, Jr., Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–14604.

Court of Criminal Appeals of Oklahoma.

April 2, 1969.

Rehearings Denied May 28, 1969.

Arthur G. McComas, Elk City, and John W. Donley, Weatherford, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Dale F. Crowder, Asst. Atty. Gen., for defendant in error.

BUSSEY, Judge.

Felix Fesmire, Jr., defendant below, was sentenced on the 17th day of November, 1967, on his plea of guilty, in the District Court of Roger Mills County, Case No.

1144 (our number A–14606 on appeal), to life imprisonment for the crime of murdering Felix Fesmire, Sr.; on the same day Felix Fesmire, Jr. was sentenced, on his plea of guilty, in the District Court of Roger Mills County, Case No. 1143 (our number A–14605 on appeal), to life imprisonment for the crime of murdering his brother, Bucky Fesmire; on the same day Felix Fesmire, Jr. was sentenced, on his plea of guilty, in the District Court of Roger Mills County, Case No. 1142 (our number A–14604 on appeal), to be executed, for the crime of murdering Roy Thomas. Appeals were perfected from each of the respective judgments and sentences rendered in the District Court of Roger Mills County, and since all three of the homicides arose out of the same factual situation, and raise essentially the same assignments of error, they are hereby consolidated and will be dealt with in this Court, under Case No. A–14604.

The records, on appeal, reflect the following:

At approximately 1:00 a. m. on the morning of February 8, 1967, Felix Fesmire, Jr., age 18, accompanied by Roy Thomas, Judy Culver (Roy's 14 year old girlfriend), and William Calloway, went to the Fesmire home where they secured the Fesmire pickup truck with which to push the Calloway car. After pushing Calloway's car, Fesmire, Thomas, and Judy Culver, returned to the Fesmire home where Fesmire and Thomas got out of the pickup, went to the Fesmire home, leaving Judy in the pickup truck. Judy saw the lights go on in the Fesmire home and about 15 or 20 minutes thereafter, Fesmire returned to the pickup truck without Thomas, explaining that Thomas was remaining there to alert them if Fesmire's father awakened. Fesmire advised Judy that his father was "dead drunk." They then drove in the pickup to the Country Boy Drive-in where they pushed Calloway's car until it was started and they then returned to the Fesmire home and parked just outside the gate. Fesmire entered the home alone and a short time thereafter returned and Judy accompanied him into the home where the lights were out.

As they entered the home, Judy heard a noise which sounded as if someone were "choking on their own blood" and Fesmire explained that his dog was going mad. He took her in the unlighted house to the very back room of the three-room house, where he attempted to kiss her and make love to her. She became alarmed and asked where Roy was and Fesmire told her that the noise that she had heard was Roy; that he was dying; and that he (Fesmire) had killed his father with a shotgun and his 10 year old brother, Bucky. Judy did not believe Fesmire and asked him to show her. Fesmire turned on the lights and Judy saw Felix Fesmire, Sr., lying on the bed with his head shot off and blood on the walls and about the room and bed. Fesmire's 10 year old brother was also lying on the bed in a pool of blood.

When Judy requested that she be allowed to see Roy, Fesmire refused her request. She then requested him to drive her home. After placing a pistol in his belt, he returned her to the pickup truck and drove her to Elk City. A block from her home the pickup stopped, she got out of the car, ran to the house, and notified the Elk City Police.

During the drive from Hammon to Elk City, Fesmire stated to Judy that he could have raped her, killed her, thrown her in the well with Roy and the rest of the bodies, and escaped to Mexico before his crime would be discovered. During this drive he patted the pistol in his belt and stated that if he were stopped he would have to shoot it out or kill himself. Also during the trip he repeated several times, "How could I do it to my old man and my little brother and my best friend."

Leon Gilliland, Sheriff of Roger Mills County, received a call from J. A. Farber, Police Sergeant of Elk City, around 2:35 in the morning of February 8, 1967; he picked up Under-sheriff Doug Shockey at the jail and they proceeded to Hammon. Enroute they saw the Hammon City Mar-

shal, Roy Drinnon, and Buster Drinnon. An Elk City ambulance also went to the Fesmire home. Upon entering the Fesmire premises around 3:00 a. m. of February 8, 1967, the officers discovered the body of Felix Fesmire, Sr. on the bed in a pool of blood with his head partially blown off. Lying next to him was the body of Bucky Fesmire, who had been stabbed in the throat 11 times and struck on the side of the head with a heavy object. In the shed room they found the body of Roy Thomas, who had been stabbed 28 times and whose head had been battered in. The medical examiner stated that either the stab wounds or the head injuries could have independently. caused the death of Thomas.

The officers found, on the premises, a baseball bat with fresh blood still dripping from it, a shotgun on the floor next to the bed in which Fesmire, Sr.'s body lay, and the broken stock of the shotgun was under Mr. Fesmire's body. They also found a bloody knife and *a pistol lying on the bed* with a scabbard in the east bedroom. Upon learning that Fesmire's pickup had been seen earlier going to the Orgain residence, the officers, after leaving the premises stopped to call Mr. Orgain, but before they could do so, they received a call from him and proceeded to the Orgain residence where they arrested Felix Fesmire, Jr., handcuffed him and removed him to the jail. Thereafter, Fesmire was charged with the murder of his father, Felix Fesmire, Sr., his brother, Bucky Fesmire, and his friend, Roy Thomas.

The court appointed two attorneys to represent Fesmire. The attorneys were Mr. Carl A. Rizley and Mr. J. Scott Vincent. Preliminary hearing was conducted on the 27th day of February, 1967, at the conclusion of which the defendant was bound over to the District Court on three separate charges of Murder. Thereafter, on the 10th day of March, 1967, after a hearing, the District Judge in and for Roger Mills County ordered that Fesmire be committed for 90 days observation at the Western State Hospital in Fort Supply, Oklahoma. At the conclusion of the observation period, the Superintendent of said institution reported to the District Court that the defendant was capable of distinguishing right from wrong and therefore should be returned to the District Court for trial.

Arraignments on all three cases were held on June 9, 1967. Defendant entered pleas of not guilty to each charge of murder. Demurrers were filed along with requests for continuance of the trials because of the bad health of defendant's attorneys. With the assent of defendant, the trial dates were changed from July 3, 1967, to August 14, 1967. Defendant's attorney, Mr. J. Scott Vincent, suffered a heart attack and on July 17, 1967, a hearing was held upon his application for withdrawal. Withdrawal was granted and Mr. John Donley was appointed in his place.

Defendant filed applications for change of venue, supported by affidavits. The State responded with counter-affidavits, and a hearing was held upon the applications on August 11, 1967. The applications were denied with the understanding that if at the time of the voir dire examination of the prospective jurors, it became apparent that there was a problem as to the defendant receiving fair and impartial trials in Roger Mills County, the defendant could at that time renew his requests.

At this hearing defendant's counsel, Mr. Carl Rizley, asked to be removed from the cases for reasons of bad health. The request to withdraw was granted, and a continuance of the trials was granted at the request of defendant, so that his newly appointed counsel could have more time to prepare for the trials. Mr. Arthur Mc Comas was appointed to assist Mr. Donley in representing the defendant.

The cases were set for trial on November 6, 1967. Applications for another continuance were filed on October 26, 1967, so that defendant's mother could be present at the trial, and a motion was made for funds pendente lite to assist her in making the trip from California. The judge denied the re-

quests for continuance on the ground that the defendant's mother had been in the county within the past two weeks, and no request was made at that time to keep her in the county. The cases were called for trial on November 6, 1967. At that time, after counselling with his attorneys, defendant made a request to withdraw his pleas of not guilty and substitute therefor pleas of guilty to the charge of Murder in all three cases.

Proceedings on the requests to withdraw the pleas of not guilty appear in the record, where the following occurred:

"IN THE DISTRICT COURT OF ROGER MILLS COUNTY, STATE OF OKLAHOMA

STATE OF OKLAHOMA
versus
FELIX FESMIRE, JR.,
Defendant.

No. 1142
" 1143
" 1144

CASE CALLED FOR TRIAL

NOW, on the 6th day of November, 1967 the above styled matter was called for trial. The State of Oklahoma appearing by the District Attorney of Roger Mills County, State of Oklahoma, Mr. Eph Monroe, and the Assistant District Attorney of Roger Mills County, Mr. Harry C. Chapman; the defendant appearing in person and by his attorneys Mr. John W. Donley and Mr. Arthur G. McComas.

The following proceedings were had, to-wit:

THE COURT: What says the state?

MR. MONROE: The State is ready.

THE COURT: What is the defendant's announcement?

MR. DONLEY: We would like to make a plea in each one of these three (3) cases. We may do that in open court or in chambers.

THE COURT: Will the defendant Felix Fesmire, Jr. please come forward. This case has been regularly set for trial today, and the jury is here and the State of Oklahoma has announced ready for trial in this case. Does the defendant have some announcement to make here in open court?

MR. DONLEY: The defendant withdraws his former plea of not guilty and enters a plea of guilty.

THE COURT: Felix Fesmire, Jr., is that your wish in this case?

MR. FESMIRE: Yes, sir.

THE COURT: Are you entering a plea of guilty here in open court to the charge of murder that is filed against you in this case, No. 1142 where you are charged with the murder of Roy Franklin Thomas on February 8th, 1967?

MR. FESMIRE: Yes, sir.

THE COURT: Now, is this a free and voluntary plea on your part?

MR. FESMIRE: Yes, sir; it is.

THE COURT: Felix Fesmire, Jr., have you conferred with your attorneys about this matter?

MR. FESMIRE: Yes, sir.

THE COURT: Do you feel like they have advised you, and have conferred and counselled with you about this matter?

MR. FESMIRE: What do you mean?

THE COURT: Have they advised with you and talked with you about this matter?

MR. FESMIRE: They have talked about it.

THE COURT: Are you satisfied with the services of the attorneys that the court has appointed to represent you?

MR. FESMIRE: Yes.

THE COURT: That is Mr. John Donley, you are satisfied with his services, and Mr. Arthur McComas?

MR. FESMIRE: Yes.

THE COURT: Now, by your entering a plea of guilty are you admitting that you committed this offense?

MR. FESMIRE: Yes.

THE COURT: As charged?

MR. FESMIRE: Yes.

THE COURT: Are you telling the court that you wish to waive any right to a jury trial?

MR. FESMIRE: Yes.

THE COURT: And this plea that you are entering at this time, is there any promises made to you?

MR. FESMIRE: No.

THE COURT: Are there any threats or duress?

MR. FESMIRE: No.

THE COURT: This is a voluntary plea in which you want to confess this crime here in open court?

MR. FESMIRE: Yes.

THE COURT: Now, Felix Fesmire, Jr., your mother is here in court with you, is that right?

MR. FESMIRE: Yes.

THE COURT: And your sister?

MR. FESMIRE: Yes.

THE COURT: And have you conferred with them?

MR. FESMIRE: Yes.

THE COURT: You have been advised what the penalty under the law is for the crime that you are entering a plea of guilty to? It is either life or death?

MR. FESMIRE: Yes.

THE COURT: And you do plead guilty?

MR. FESMIRE: Yes.

THE COURT: Alright, I will accept your plea of guilty in that case, that is Case No. 1142. The Court finds that the defendant's plea is entered voluntarily and freely after he has conferred with his two court appointed attorneys, and in their presence, and in the presence of his mother and sister. The Court accepts his plea of guilty and it is entered into the record.

THE COURT: Now, what is the announcement in Case No. 1143?

MR. MONROE: The State announces ready for trial.

MR. DONLEY: Comes now the defendant Felix Fesmire, Jr. in this case and withdraws his former plea of not guilty and enters a plea of guilty.

THE COURT: In this case Felix Fesmire, Jr. you were charged with murder on February 8, 1967 of Bucky Fesmire, and you heard the statement that your attorney made. What is your statement?

MR. FESMIRE: I am guilty.

THE COURT: You wish to plead guilty in that case?

MR. FESMIRE: Yes, sir.

THE COURT: Now, we previously had a discussion in the other case. Would your answers all be the same with reference to your tendered plea in this case?

MR. FESMIRE: Yes.

THE COURT: It is free and voluntary?

MR. FESMIRE: Yes.

THE COURT: By that plea are you admitting and confessing here in open court that you committed this crime of murder?

MR. FESMIRE: Yes.

THE COURT: You are telling the court that you do not want a jury trial?

MR. FESMIRE: Yes.

THE COURT: The Court will, on the basis of your statements in the other case and answers to questions received, receive your plea of guilty in Case No. 1143.

THE COURT: Alright, Case No. 1144, State of Oklahoma versus Felix Fesmire, Jr. The State's announcement?

MR. MONROE: The State announces ready for trial.

THE COURT: The defendant's announcement in this case?

MR. DONLEY: Comes now the defendant and withdraws his former plea of not guilty and enters a plea of guilty in this case, Judge.

THE COURT: In Case No. 1144 the defendant is charged with the crime of murder on February 8th, 1967 of Felix Fesmire, Sr. You have heard the statement of your attorney. What is your statement here to the court?

MR. FESMIRE: I plead guilty.

THE COURT: You are pleading guilty to that case?

MR. FESMIRE: Yes.

THE COURT: Would the same answers you have made to the court in these other cases also apply to your tendered plea in this case?

MR. FESMIRE: Yes.

THE COURT: Are you telling the court, Felix Fesmire, Jr., that you did commit this crime?

MR. FESMIRE: Yes.

THE COURT: And that you do not want a jury trial?

MR. FESMIRE: No.

THE COURT: And that the plea in this case is free and voluntary?

MR. FESMIRE: Yes.

THE COURT: It is not made with any promise to you, is it?

MR. FESMIRE: No.

THE COURT: And you understand the penalty that the law prescribes for the offense for which you have plead guilty?

MR. FESMIRE: Yes.

THE COURT: You do want this plea to stand in all three (3) of these cases?

MR. FESMIRE: Yes.

THE COURT: You do understand, Felix Fesmire, Jr., that you would have the right to a jury trial and if it were tried you would have the right for the jury to determine what, if they should find you guilty, what the punishment will be, but by you pleading guilty you are waiving that right also?

MR. FESMIRE: Yes.

THE COURT: Then it becomes a responsibility for the court?

MR. FESMIRE: Yes.

THE COURT: Do you understand that?

MR. FESMIRE: Yes.

THE COURT: I will accept your plea of guilty in Case No. 1144. These pleas have been entered, and these three (3) cases are stricken from the jury docket. Now, we will set Judgment and Sentence—

MR. DONLEY: I might make a statement before you decide.

THE COURT: I had in mind to set Judgment and Sentence in December, maybe.

MR. MONROE: Whatever would be satisfactory with the defendant and counsel for the defendant is satisfactory with me.

MR. DONLEY: His mother and sister are here, we would like to have it set the last of next week.

MR. MONROE: On the 26th we have a District Attorney's Association Meeting at Fountain Head Lodge and I will be there Saturday.

THE COURT: We will set it a week from Friday, the 17th. Is that date satisfactory with everyone? The Court has in mind to have a hearing in full in aggravation and mitigation as provided by the statute, and at such hearing we would, I think, allow the State to introduce the Transcript of the preliminary hearing, and anything else they wish to offer to show to the Court the facts, background, circumstances or anything, so that the Court can have the full and complete picture in connection with the matter of Judgment and Sentence. The date of November 17th at 9:30 A.M., Friday, is that satisfactory with everybody?

MR. DONLEY: Yes.

MR. MONROE: Yes.

THE COURT: Is that satisfactory with the defendant's mother?

MRS. FESMIRE: Yes.

THE COURT: Judgment and Sentence, and a hearing on aggravation and mitigation will be set at 9:30 A.M. Friday, November 17th, 1967. Felix Fesmire, Jr., you are remanded back to the custody of the Sheriff until that hearing."

On the 17th day of November, 1967, a hearing was conducted in the District Court of Roger Mills County on aggravation and mitigation of punishments to be imposed for the three murders in District Court cases no. 1142, 1143 and 1144. At this hearing the defendant testified in his own behalf, after detailing a history of the relationship between him and his father concerning the beatings administered by the latter during the defendant's boyhood and up until the time of the homicides. He stated that when he arrived at the Fesmire home the third time on the morning of February 8, 1967, he entered the house with Roy Thomas, who had remained there outside the house, and that when he went to the refrigerator to get liquor, his father awoke and slapped him and that he killed his father with the shotgun. He testified that he hated his father and that was why he killed him and that he was not sorry that he killed his father, but that he was sorry that he killed his brother and Roy Thomas. The defendant repudiated prior statements that Roy Thomas had killed his father and brother and that he had killed Roy Thomas for that reason. He stated that he had just recently begun to recall the events on the evening of the homicide. On cross-examination he specifically acknowledged that he had killed Roy Thomas and his little brother when he exploded after killing his father. He denied attempting to kiss or make love to Thomas' 14 year old girlfriend (Judy Culver) at the Fesmire home, although he did admit that he had told her about killing his father, brother and Roy Thomas. He denied having the pistol in his possession when he returned the girl to Elk City or making any of the statements attributed to him during that trip. He denied returning to the Fesmire home and bashing in Roy Thomas' head with a baseball bat after letting the girl out in Elk City, but stated that he went to the Orgain home, requested that they notify the police, and waited for the police to arrive.

Mrs. Mary Fesmire, mother of the defendant, and Mary Francis Robinson, half-sister of the defendant, testified in substance that prior to the Fesmire separation, Felix Fesmire, Sr. had mistreated the defendant and shown partiality to his younger brother, Bucky.

Pastor Fred J. Webb testified that since the defendant's incarceration, he had visited with the defendant frequently, reading the Bible to him and that the defendant had become a good Christian. He acknowledged that the defendant understood the biblical passages and was always courteous and interested.

The next two witnesses called were Dr. John R. Smith, psychiatrist from the Oklahoma Medical Center, and Dr. Richard Sternlof, psychologist from the Center. Their testimony, in substance, was that Sternlof had tested the defendant for approximately four hours during the previous afternoon and Dr. Smith had witnessed the testing. Both expressed the opinion that the defendant was psychotic and Dr. Smith characterized this mental disorder in the following language appearing at page 432 of the casemade:

"What I am saying is that he has an illness which is quite capable of impairing his capacities to reason, to think, and to behave in a controlled and appropriate way. It does not necessarily follow that all of his mental capabilities have been swept away by the illness, and in fact I feel if you would ask him if murder was wrong he would tell you it was wrong. He certainly knows the difference between right and wrong."

Dr. Sternlof testified that while the defendant was within the normal range of intelligence, he was laboring under a mental disorder which in stress situations would render him very vulnerable and incapable of controlling his emotions. On cross-examination this witness acknowledged that he had not indicated in any way that the defendant was incapable of distinguishing right from wrong and expressed the opinion that at the time of the hearing the defendant knew the nature and quality of his acts.

The late Dr. Harold Witten, Superintendent at Fort Supply Hospital, testified that based on his observation of the defendant during the 90 day observation period together with a review of the clinical records of tests conducted during that period of time,

"I approached this problem as a friend of the Court, and not as one of the contenders, and I feel that I am morally constrained to verify what Dr. Smith and Dr. Sternlof testified to here, and our findings were exactly the same, and I concur that in my professional opinion the defendant is sane and could stand trial, but he has a psychotic process that makes him vulnerable to temporary or intermittent loss of contact, and which behavior could occur [sic]."

At the conclusion of Dr. Witten's testimony, the clinical records of Fort Supply Hospital were admitted into evidence and counsel for the defendant and the State presented their arguments to the Court. At the conclusion of the arguments, the following appears in the casemade, beginning at page 558:

"THE COURT: I guess it was all understood and agreed that the hearing today applied to all three cases?

MR. DONLEY: Yes.

MR. MONROE: Yes.

THE COURT: Let the record show the hearing today is applicable to each case.

THE COURT: We will start with Case No. 1144. Would the defendant please rise?

Felix Fesmire, Jr., you are informed by the court that you were charged in this case with the murder of Felix Fesmire, Sr., and you have entered a plea of guilty in that case. I will ask you if everything has been shown to the court up to now, if there is any legal cause to show why Judgment and Sentence should not be pronounced against you?

MR. FESMIRE: No.

THE COURT: Does counsel know of anything further?

MR. DONLEY: No, sir.

THE COURT: Case No. 1144, you are charged with the murder of Felix Fesmire, Sr., your father. It is the Judgment of the court that you are guilty, and in that case you are ordered committed to the Department of Corrections of the State of Oklahoma for a term of life imprisonment, time to begin when delivered to the Warden of that institution. Now, in this case you are notified that you have the right to appeal to the Court of Criminal Appeals, and if you do not have the funds as it has been demonstrated up to now, you could upon proper application be furnished attorneys for you, and a record furnished to you without cost so that you could perfect your appeal; however, if you wish to appeal you must given notice in open court here today, or file a written notice within 10 days. Do you understand about the appeal in that case?

MR. FESMIRE: Yes.

THE COURT: Case No. 1143, which you are charged with the murder of Bucky Fesmire, your brother, in which you have entered a plea of guilty as charged. I will ask you whether you have anything further than everything that has been shown up to now, to show any legal cause why Judgment and Sentence should not be pronounced against you?

MR. FESMIRE: No.

THE COURT: Anything further, gentlemen?

MR. DONLEY: No.

THE COURT: Judgment and Sentence in this case is more difficult, but considering the fact you were 18 years of age, it is the Judgment of the court in this case, the murder of Bucky Fesmire, that you are committed to the custody of the Department of Corrections of the State of Oklahoma for a term of life imprisonment, which will begin upon the completion of the term of life imprison-

ment in Case No. 1144 imposed this date. You are notified that you do have the right to appeal in this case, and if indigent, which it appears that you are, to have an attorney appointed for you, and a complete record furnished you without cost, but if you wish to appeal in this case you must file Notice here in court today, or within 10 days, or you will have waived your right to appeal.

THE COURT: In Case No. 1142, in this case you were charged with the murder of Roy Franklin Thomas, your friend, and you entered a plea of guilty. I will ask you whether there is any legal cause to show to the court in addition to everything that has been shown up to now why Judgment and Sentence should not be pronounced against you. Is there any legal cause?

MR. FESMIRE: No.

THE COURT: Gentlemen, do you know of any legal cause?

MR. DONLEY: No, Your Honor.

THE COURT: I might say that each case that comes before the court is different, and each person that comes before the court is different. Their background and their circumstances, and I think that is why the law provided for different punishments. There are some factors in your favor, the fact that you were eighteen (18); there are some terrible factors on the other side of the scales. The Court views this case as a mass murder, a mass murder. I don't believe our society can tolerate it, and it appears to me that for the court to choose the minimum penalty would be an attempt by a trial court to repeal or completely ignore the law of Oklahoma. That is not a function of a trial court; maybe some other court somewhere else, but a trial court must follow the law.

It is the Judgment of the Court that you are guilty of murder, and the sen-

tence is death. The date is set at 88 days from this date, provided if that date falls on a Sunday it would be the 89th day, or if it is a holiday. You are notified in this case that an appeal must be had. This matter must be appealed, and I will appoint attorneys for you at this time. I will appoint Mr. John Donley and Mr. Arthur McComas. If there is any other request by the defendant, or by the attorneys, I would be happy to consider them. These attorneys are appointed for you, and the Court Reporter is ordered to prepare a full and complete record in this case and furnish it to your counsel so that your appeal may be perfected. I am sorry, I guess no one could appreciate the jury system more than me at this time, but I don't feel that I can evade my responsibility under the law. We will pass this matter onto someone else for further consideration. In my opinion you went too far, too far, after one Judge had tried to help you.[1] You are remanded back to the Sheriff of this county. You may be seated.

District Court of Roger Mills County is adjourned."

Thereafter, on the 22nd day of November, 1967, defendant filed a Motion for New Trial and Motion to Vacate Judgment and Sentence, and on December 4, 1967, filed an Amended Motion for New Trial and Motion to Vacate Judgment and Sentence (in each case). Attached to the Motion for New Trial as Exhibit "A" is a reproduction of a newspaper article which appeared in the Cheyenne newspaper (a newspaper published in the county seat of Roger Mills County); Exhibit "B" attached to said Motion is a paper by Dr. Louis Jolyon West entitled Medicine and Capital Punishment; and Exhibit "C" was a newspaper article written by James Jackson carrying the caption, "Nothing Promised Slayer District Attorney Declares." Attached to the Amended Motion for New Trial was Exhibit "D," a letter from Dr. Harold Witten

---

1. Defendant testified that he was convicted of Armed Robbery in 1966 in Dumas, Texas, and was given a five year suspended sentence.

to Judge Wilson, dated June 1, 1967; Exhibit "E" was a report of examination of Felix Fesmire, Jr. by Dr. John R. Smith, conducted on the 16th day of November, 1967, and Exhibit "F" was the Psychological Summary prepared by Dr. Richard E. Sternlof, detailing his conclusions from tests conducted on the 16th day of November, 1967.

On December 4, 1967, a hearing was held on the various motions, applications and amendments in the District Court of Roger Mills County. No testimony or evidence was offered, but after extensive argument by the respective parties, the court overruled the Motions for New Trials and Motions to Withdraw Pleas of Guilty in cases no. 1142, 1143 and 1144, and timely appeals have been perfected to this Court from each of the judgments and sentences.

This leads us to a consideration of the issues raised in the appeals from the judgments and sentences rendered against the defendant. In dealing with the various assignments of error, we will consider them in the order in which they arose during the trial proceedings, and not in the order in which they were presented to this Court in the briefs of the respective parties and in the oral argument conducted on the 13th day of November, 1968, in A–14604.

■ It was contended that the trial court was without jurisdiction to pronounce the judgments and sentences imposed in that the defendant had not been indicted by a grand jury for the capital offenses with which he was charged, but rather had been proceeded against by information. No authority is cited in support of this contention, but to the contrary, in an unbroken and consistent line of cases, stemming from the early case of In re McNaught, 1 Okl.Cr. 528, 99 P. 241, and cited with approval in Sisson v. State, Okl.Cr., 426 P.2d 379, this Court has uniformly held:

"The second proposition has been passed on many times by this Court. In the early case of In re McNaught, 1 Okl.Cr. 528, 99 P. 241, in an opinion dealing ex-

haustively with this contention, this Court concluded that under Article 2, § 17 of the Constitution of the State of Oklahoma, prosecutions may be by indictment or information as they are alternative modes and that a prosecution by information does not violate either the 14th or 5th amendment of the Constitution of the United States. See also Berryman v. State, Okl.Cr., 283 P.2d 558; Pierro v. Turner, 95 Okl.Cr. 425, 247 P.2d 291; Jordan v. Turner, 95 Okl.Cr. 307, 245 P. 2d 748."

See also Martin v. Page, Okl.Cr., 444 P.2d 830. In accordance with the authorities above set forth, we are of the opinion that this assignment of error is without merit.

■ It is also contended in the trial court that the trial court erred in refusing to grant a change of venue. As we have heretofore set forth, a Motion for Change of Venue was duly filed before the trial court, together with affidavits in support thereof, counter-affidavits were filed on behalf of the State, and after hearing evidence in support of the motion and against the motion, the trial court made the following statement:

"It is my opinion that the trial court, before I read all of this law and the cases, I thought the law was a little bit different than it is. I do not feel like there has been a showing made here that necessitates a Change of Venue. As of this time I am going to deny the application of the defendant for a Change of Venue, with the understanding that at the time of the voir dire examination of the prospective jurors, if it should then become apparent that there is a problem as to the defendant having a fair and impartial trial in Roger Mills County, the defendant could at that time renew his request, and it would be reconsidered by the court on the basis of the subsequent developments in the process of selecting a jury."

On the record before us we are of the opinion that the trial court properly exercised his discretion in denying the Motions for Change of Venue, based upon the evidence

presented to him. We are further fortified in this conclusion by the judge's statement that should it appear from the voir dire examination of the jurors that the defendant would have a problem in receiving a fair trial in Roger Mills County, he would reconsider the Motions for Change of Venue. In Pate v. State, Okl.Cr., 361 P.2d 1086, we stated:

"The granting of a change of venue is a matter within the sound discretion of the trial court, and unless it clearly appears that there is an abuse of such discretion, the decision of the trial court will not be reversed for failure to grant a change of venue."

See also Shapard v. State, Okl.Cr., 437 P.2d 565, wherein this Court stated:

"Where there has been widespread adverse pretrial publicity about defendant, proper procedure in vast majority of cases is not to postpone trial indefinitely or for substantial period of time, but to proceed to trial and to determine on voir dire of panel and individual talesman whether fair and impartial jury can be selected."

In the instant case the District Attorney, the trial court, and the police officials connected with the case are to be commended for their expeditious manner in refraining from making any statements concerning the cases which might have resulted in adverse publicity prejudicial to the rights of the accused. Moreover, we find it difficult to see how a defendant who enters pleas of guilty before the trial court can in any wise be prejudiced by the court's prior failure to grant a change of venue.

This leads us to a consideration of defendant's contention that the trial court erred in overruling his Motions for New Trials and Applications to Withdraw Pleas of Guilty and his attorneys argue that not until the hearing on the evidence in mitigation and aggravation were they aware of the possibility of legal defenses of insanity. They argue that they were misled by the letter of transmittal from Dr. Harold Witten, dated June 1, 1967, wherein he stated that the defendant was not laboring under any psychosis, was capable of distinguishing right from wrong and able to assist in the preparation of his defense. They also refer to the clinical report of Dr. Fulgenzi, psychologist at Western State Hospital, who tested defendant on March 20, 1967, and reports of Drs. Smith and Sternlof which were attached to the Amended Motions for New Trials, and requests to Withdraw Pleas of Guilty.

In oral argument before this Court, and in their briefs, the attorneys contend that the defendant was incapable of assisting in the preparation of his defense and cite his testimony that only fifteen minutes prior to appearing in court to withdraw his pleas of not guilty and enter his pleas of guilty, the defendant for the first time informed his attorneys that he had killed his father, his brother, and Roy Thomas.

We have carefully considered the entire records compiled during the 90 day observation, together with the sworn testimony offered by the State and the defense at the hearing on aggravation and mitigation of punishment, and find nothing that would leave a reasonable doubt as to the ability of the defendant to assist in the preparation of his defense or which would indicate that he did not knowingly and voluntarily enter pleas of guilty to the crimes charged without full knowledge of the nature and consequences of such pleas. Moreover, we observe that after the attorneys for the defendant were fully aware of the testimony of Dr. Witten, Dr. Smih and Dr. Sternlof, no attempt was made to withdraw the pleas of guilty prior to the imposition of judgments and sentences, but indeed, his testimony was referred to as a basis upon which they urge the court to impose life sentences in all three of the homicides. It was not until after the trial court sentenced Fesmire to death for the slaying of Roy Thomas, that they evolved the theories they presently urge as grounds for reversal.

We are of the opinion that the trial court did not err in refusing to grant new trials and in denying the defendant's requests that he be allowed to withdraw his pleas of

guilty previously entered. We believe the following authorities support us in arriving at this conclusion:

"The defendant's final contention is that[i] the court erred in failing to grant him a jury trial to inquire into the sanity of the defendant, prior to the pronouncement of judgment and sentence. This contention is wholly inconsistent with the defendant's plea of guilty entered the day before * * *. This motion in arrest of judgment, however, suggested insanity both at the time of the commission of the offense and at the time of filing the motion in arrest of judgment. Of course, the matter of insanity at the time of committing the offense was a matter of defense which might have availed the defendant, had it been raised at the proper time. * * *" Wallin v. State, 84 Okl. Cr. 194, 182 P.2d 788.

"Where the defendant seeks to withdraw his plea of guilty and substitute therefor a plea of not guilty, the burden is upon the defendant to show that his plea of guilty was entered through inadvertance or through ignorance, influence, or without deliberation, and that there is a defense that should be presented to the jury." Scroggins v. State, Okl.Cr., 287 P.2d 217.

"The county attorney agreed to recommend a suspended sentence, which he did, * * *. Defense counsel elected to plead Mr. Antuna guilty, on the supposition that he would receive a suspended sentence, and then expressed surprise when he did not. * * * Defendant gambled and lost on his bet that the judge would suspend the sentence. He now wants to reverse his field, and try his luck thru the trial route, contending that he has a good defense to the charge. * * * 'Defendant should not be permitted to trifle with court by changing plea to criminal charge capriciously.'" Antuna v. State, Okl.Cr., 388 P.2d 345.

 We are also of the opinion that the contention that the trial court erred in

refusing to impanel a jury to determine the present sanity of the defendant in the light of the testimony of Drs. Witten, Smith and Sternlof, heretofore referred to, is completely without merit, for in our view no question or doubt arose in the mind of the trial judge as a result of his examination of the clinical findings of the 90 day observation period and the sworn testimony of the witnesses. In Grayson v. State, 85 Okl.Cr. 266, 188 P.2d 696, we stated:

"The plea of present insanity, going to accused's ability to defend or the court's right to impose sentence, under the provisions of Title 22 O.S.A. § 1162 must be raised either at the beginning of the trial or before judgment and sentence is pronounced.

* * * * * *

Before the trial court impanels a separate jury to try the issue of the defendant's present sanity, under the statute, a doubt must arise in the mind of the court, from the facts and circumstances which facts and circumstances should be of a substantial character."

 It is also contended that the defendant relied on assertions made by the District Attorney, as evidenced by a newspaper article purporting to quote the District Attorney. Significantly, this article was published after the defendant had entered his pleas of guilty, and could in no way have influenced his pleas of guilty. In oral argument before this Court, the District Attorney specifically denied any agreement to recommend a life sentence in exchange for the pleas of guilty. In the light of the defendant's thorough questioning at the time of the entry of his pleas of guilty and his affirmative assertions that no promises had been made him, we find that the record wholly fails to support this assignment of error.

 We are of the opinion that the additional contention that the trial court was swayed by the strong argument of the District Attorney and thereby imposed the death sentence is refuted by the remarks

of the trial court, appearing at page 606 of the record, wherein the court stated:

"The recommendations of the District Attorney, the Court listened to the argument of both sides, I believe that after five (5) years on the bench I don't get carried away by argument of counsel. Maybe I do, but I don't think so. This case was considered on the facts and the evidence, and the sentencing was the court's responsibility. No place else could it be placed, delegated or passed. It was my responsibility solely, as is is in every criminal case.

I think we used to have a practice in this district of courts being somewhat by policy committed to follow the recommendations of the district attorney, but that is no longer the practice. The court can't delegate that responsibility and sentencing, that is clearly the court's responsibility, and it was my understanding that this plea was made with the understanding of what the law provided clearly as to the possible punishment, and it would be the court's responsibility to determine this, and the court did."

Having concluded that the defendant freely and voluntarily entered his pleas of guilty, with full knowledge of the nature and consequences of such pleas, and that the trial court did not err in refusing to grant his motions for new trials and his applications to withdraw his pleas of guilty, this leads us to a consideration of whether the punishments imposed were excessive. Title 21 O.S. § 707 provides:

"Every person convicted of murder shall suffer death, or imprisonment at hard labor in the State penitentiary for life, at the discretion of the jury. Upon trial of an indictment for murder, the jury, if they find the defendant guilty, must designate in their verdict whether he shall be punished by death or imprisonment for life at hard labor, and the judgment of the court shall be in accordance therewith. *But upon a plea of guilty the court shall determine the same.* [Emphasis added].

■ The judgment and sentence imposed against the defendant in the District Court of Roger Mills County, Case No. 1144, for the murder of his father, Felix Fesmire, Sr., is the minimum which could be imposed under 21 O.S. § 707, supra, and for that reason could not be excessive. This same is true of the judgment and sentence imposed against the defendant in Roger Mills County Case No. 1143, for the murder of his brother, Bucky Fesmire.

■ This leads us to a consideration of the judgment and sentence imposed against the defendant in the District Court of Roger Mills County Case No. 1142, wherein he was sentenced to death for the murder of Roy Franklin Thomas. The court had before it the defendant's plea admitting his guilt, together with all the facts and circumstances surrounding Thomas' slaying, and could only have concluded that the slaying of Thomas was a deliberate act, conducted in cold blood in order to conceal the commission of the other two homicides. Moreover, there is substantial evidence from which the trial court could have concluded that Thomas was alive at the time the defendant drove the 14 year old girl to Elk City, and that Fesmire returned to the home and beat Thomas' skull in with a baseball bat. These conclusions can be drawn from the fact that Thomas was breathing when the defendant and the 14 year old girl left; that the defendant took with him the pistol found by the investigating officers at the scene of the homicides which would indicate that he had revisited the scene after returning from Elk City; the fresh blood on the baseball bat, not yet coagulated gave credence to these conclusions, notwithstanding the defendant's assertion that he did not return to the Fesmire home after taking the girl to Elk City and that he did not take the pistol with him on that trip. Whatever might be said about the murder of his father, Felix Fesmire, Sr., by way of justification for the harsh treatment meted out to the defendant by the father, it does not appear that the defendant's friend, Roy Thomas performed any act or deed which might be considered in mitigating the pun-

ishment of his murderer. Although the comparative merits of capital punishment have been presented in arguments before this Court many times, and the proponents for its abolition have argued its moral, legal, and social implications, neither this Court, nor as yet the Supreme Court of the United States, has seen fit to classify the imposition of capital punishment as being cruel and unusual and therefore in violation of the Constitution of the United States.

We are of the opinion, and therefore hold, that the trial court's action in imposing the death penalty in Roger Mills District Court Case No. 1142 (our No. A–14604 on appeal), was supported by the record and that the judgment and sentence should be, and the same is hereby affirmed.

The judgment and sentence rendered in the District Court of Roger Mills County Case No. 1144 (our No. A–14606 on appeal), should be, and the same is hereby affirmed.

The judgment and sentence rendered in the District Court of Roger Mills County Case No. 1143 (our No. A–14605 on appeal), should be, and the same is hereby affirmed.

These cases presented a most difficult task for the Honorable Charles Wilson, District Judge of the 2nd Judicial District, whose conduct and demeanor throughout the lengthy proceedings reflect great credit upon the bench of Oklahoma. Judge Wilson, as one of Oklahoma's outstanding trial judges, is commended for the judicious manner in which he presided over these cases.

We also wish to commend Messrs. Arthur McComas, John Donley, and Eph Monroe for their highly professional dedication to their respective obligations to the Bar and the administration of justice as demonstrated by their performance in the trial court and the preparation and presentation during oral arguments before this Court.

The date originally appointed for the execution of the defendant, Felix Fesmire, Jr., having passed pending this appeal, it is ordered, adjudged, and decreed by this Court that the judgment and sentence of the District Court of Roger Mills County, Case No. 1142, be carried out by the electrocution of the defendant Felix Fesmire, Jr. by the Warden of the State Penitentiary at McAlester, Oklahoma, on Friday, June 20, 1969.

BRETT, P. J., and NIX, J., concur.