Thomas S. MENTHEN, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–16154.

Court of Criminal Appeals of Oklahoma.

Oct. 20, 1971.

As Corrected Oct. 21, 1971.

Rehearing Denied Dec. 10, 1971.

Second Rehearing Denied Jan. 20, 1972.

Richard M. Fogg, J. L. Pazoureck, El Reno, for plaintiff in error.

Larry Derryberry, Atty. Gen., Fred H. Anderson, Asst. Atty. Gen., for defendant in error.

BUSSEY, Presiding Judge:

Thomas S. Menthen, hereinafter referred to as defendant, entered a plea of guilty in the District Court of Canadian County to the offense of Murder; his punishment was fixed at death by electrocution, and from said judgment and sentence, a timely appeal has been perfected to this Court.

The records, on appeal, reflect that on the morning of August 30, 1969, the defendant drove to a house owned by one Jack Graham, and stated that he needed to use the telephone to call the police because he had found a dead body.

After using the telephone, he asked if he could wash his hands. Officer Johnson responded to the defendant's call and was subsequently taken to the location by the defendant, where the body of a small child was found. The defendant stated that he received an anonymous telephone call concerning the location of the body. The body had several stab wounds and the face was heavily beaten. Trooper Foltz arrived at the scene at the approximate time as the defendant and Officer Johnson. After preliminary investigation, the defendant was advised of his rights against self-incrimination, was placed under arrest and transported to the Oklahoma City Police Department. Thereafter, the defendant was then advised of his *Miranda* rights, and he made a statement to the effect that he promised the little boy some pop and candy to go for a ride with him. They went riding around for awhile, and went up on Morgan Road, where they stopped. The little boy got smart with him, whereupon defendant hit the boy several times, stabbed him with a screwdriver, and took the boy's pants off, and also choked him. This statement was made in the presence of Trooper Foltz, the Assistant District Attorney, and the Sheriff of Canadian County. The victim was a three and one-half year old Indian male, who was discovered missing at approximately 9:00 a. m. on August 30, 1969, shortly after having been seen talking to the defendant.

The defendant was arraigned on September 2, 1969, at which time he waived his right to an attorney. On September 15, 1969, J. L. Pazoureck, the Public Defender, was appointed to represent the defendant. On the same date, the defendant was transported to Central State Griffin Me-

morial Hospital at Norman, Oklahoma, for observation and an examination at the request of the District Attorney.

On November 12, 1969, Dr. Loraine Schmidt advised the court, by letter, that upon completing the examination that the defendant was not "mentally ill."

Preliminary Hearing was conducted on December 8, 1969, at the conclusion of which, the defendant was bound over for trial on the charge of Murder. The defendant was arraigned on the same date before the District Court and entered a plea of Not Guilty. Thereafter, on the 30th day of December, 1969, the defendant filed objections to the psychiatric report and requested additional psychiatric evaluation.

On February 2, 1970, the defendant requested that he be furnished with a complete case history from Central State Griffin Memorial Hospital, which Motion was ruled upon on the 24th day of February, 1970, and sustained. On March 5, 1970, the defendant appeared, with counsel, and announced to the court that he wished to change his plea previously entered from "Not Guilty" to "Guilty." The record reflects the following transpired:

"THE COURT: This case is styled State of Oklahoma vs. Thomas S. Menthen being CR-69-385, Information in which bears the title of Murder. Show the appearances as the District Attorney or Assistant District Attorney rather, Mr. George S. Turner, the Assistant District Attorney, Mr. Garland Bloodworth, the Public Defender, Mr. Jean Pazoureck, Defendant Thomas Menthen,—Father, what is your name for the record?

BY FATHER FRANK WRIGLEY: Father Frank Wrigley.

THE COURT: Father Frank Wrigley of Norman, Catholic priest, am I not correct, Father?

BY FATHER FRANK WRIGLEY: Yes.
THE COURT: Mr. Menthen, would you approach the bench please? Was that by chance Mr. Menthen's mother who you were with?

BY FATHER FRANK WRIGLEY: Yes.
THE COURT: Would she like to be here?

BY MR. PAZOURECK: We prefer that she not be here.

THE COURT: All right. Let me ask you this, Mr. Menthen, I understand in general that you have asked to come over to change your plea in this case from not guilty to guilty. Before we go any further I just want to ask you if that is substantially correct in your position?

A. Yes.

Q. All right, is Thomas S. Menthen your true and correct name?

A. Yes, sir.

THE COURT: Mr. Pazoureck, the record reflects that you filed a demurrer in this case today. Are there any other motions on file in the case which have not been ruled upon?

BY MR. PAZOURECK: No, sir.

THE COURT: There are no pending motions?

BY MR. PAZOURECK: No, sir.

THE COURT: All right. Any precedent or argument you wish to make as to your demurrer?

BY MR. PAZOURECK: No, sir.
THE COURT: Demurrer will be overruled. Exceptions. What does the letter S stand for, Mr. Menthen? In your middle name?

A. Stephen.

THE COURT: Thomas Stephen Menthen then is your true and correct name?

A. Yes, sir.

Q. How old are you today, Mr. Menthen?

A. Twenty-five.

Q. Twenty-five years. Mr. Jean Pazoureck as Public Defender is your attorney, is that correct, sir?

A. Yes.

Q. And have you in fact been previously appointed by this Court?

BY MR. PAZOURECK: Yes, sir, Your Honor.

THE COURT: And you also represented Mr. Menthen in Preliminary Hearing I presume?

BY MR. PAZOURECK: Yes, sir.

THE COURT: Mr. Menthen, do you understand you are charged in this Court with the crime of murder?

A. Yes, sir.

Q. That the maximum punishment for that offense is death in the electric chair, the minimum punishment is life imprisonment, you understand that, sir?

A. Yes, sir.

Q. Have you had a copy of this charge, this Information, which has been filed against you?

A. Yes, sir.

THE COURT: You also, Mr. Pazoureck, acknowledge a copy of it?

BY MR. PAZOURECK: Yes, sir.

THE COURT: Mr. Menthen, do you understand that upon a plea of guilty you may be sentenced to either one of those two punishments, either death in the electric chair or life imprisonment?

A. Yes, sir.

Q. All right. You are entitled to a jury trial on this charge and to have your guilt first and then if guilt be found, then punishment fixed by a jury of twelve men or women. Do you understand your right to a jury trial?

A. Yes.

Q. Would you like to have a jury trial in this case?

A. No.

Q. You wish to waive your right to a jury trial?

A. Yes.

THE COURT: You concur in that, Mr. Pazoureck?

BY MR. PAZOURECK: Yes, sir.

THE COURT: Now, Mr. Menthen, have you discussed this matter with Mr. Pazoureck as your attorney?

A. Yes, sir.

Q. And had his advice and counsel in this matter?

BY MR. PAZOURECK: We have discussed it.

A. Yes.

THE COURT: Well, do you understand your rights?

A. Yes.

Q. Do you wish to change your plea now from not guilty?

A. No.

Q. You do not wish to change your plea?

BY MR. PAZOURECK: You want to enter a plea of guilty?

A. Yes, plea of guilty.

THE COURT: Well, my question was do you wish to change the plea you have previously entered, Mr. Menthen? You stand now on a plea of not guilty to this charge. My question is do you want to change that plea you have previously made?

A. You mean change from not guilty to guilty?

Q. Yes, that is my question. Do you desire to change your plea to guilty?

A. Yes.

Q. And what then is your plea to this charge of murder?

A. Guilty.

Q. Tell me this, Mr. Menthen, do you enter this plea of guilty because in fact on the 30th day of August of the year 1969 in Canadian County you did commit the crime of murder on one Gaylon Anthony King?

A. Yes.

Q. You did so do?

A. Yes.

Q. Has any one abused you or mistreated you or threatened you to enter this plea of guilty today?

A. No.

Q. All right. Has any one made any promises to you to induce you to enter this plea of guilty?

A. No.

THE COURT: Gentlemen, the plea is found by the court to be voluntarily given. I will accept it. I take it you would both like time certain for the passing of judgment and sentencing to be fixed in the future so you may have time to prepare.

BY MR. PAZOURECK: If it please the Court, I would like to ask Defendant some questions.

THE COURT: You may proceed.

BY MR. PAZOURECK: Now, Mr. Menthen, I am Jean Pazoureck, J. L. Pazoureck, the Public Defender. I have heretofore been appointed by the Court to represent you and have I in any way induced you by coercion or any other way to enter this plea you have entered today?

A. No.

Q. You have done so on your own free voluntary will, is that not correct?

A. Yes, sir.

Q. This decision was made by you strictly on a voluntary basis?

A. Yes, sir.

Q. And I have not in any way coerced you to do so?

A. Right.

Q. I have advised you as the Court has advised you that on a plea of guilty the maximum sentence is a death sentence and the minimum is life imprisonment, is that correct?

A. Yes.

Q. And you have made up your mind by yourself without any coercion whatsoever, is that correct?

A. Yes.

BY MR. PAZOURECK: O. K.

THE COURT: In this regard have you informed your mother of your intention to change your plea, Mr. Menthen?

A. No.

Q. You have not told her?

A. She is here now.

Q. Yes, she is here in the Courthouse I understand. You want to tell her that today?

BY MR. PAZOURECK: She knows, your Honor.

THE COURT: You have told her that, Mr. Pazoureck?

BY MR. PAZOURECK: Father Wrigley has told her.

THE COURT: You did tell Father Wrigley about your desire to change your plea?

A. Yes, sir.

Q. You have discussed the matter with him?

A. Yes, sir.

BY MR. TURNER: If the Court please, I would like for the Court to point out to him the maximum penalty so he understands the Court's position.

THE COURT: It has already been pointed out to him twice. I pointed it out to him. Mr. Pazoureck pointed it out to him.

BY MR. TURNER: All right.

THE COURT: Accepting your plea, what is your pleasure, gentlemen, on a time to set the execution of judgment and sentence? In this regard I am going to require a request from the Corrections Office, a pre-sentencing investigation. So, it will take at least thirty days as a minimum.

BY MR. BLOODWORTH: We would request as soon as possible, Judge.

THE COURT: All right, let's set it down if you will check your calendars with me for—let me check my trial docket, gentlemen. Let's set it down for the 7th day of April, 1970, at 9:00 a. m.

BY MR. PAZOURECK: Just a minute, your Honor. Let me see.

THE COURT: See if that date is agreeable to you.

\* \* \* \* \* \*

THE COURT: All right, with this understanding if that is an insufficient time in which the Department of Probation can conduct whatever they need to do to furnish me the pre-sentence investigation we

may need to take a little bit additional time. * * *."

Thereafter, on May 7, 1970, the court conducted a hearing on mitigation or aggravation of punishment and after hearing witnesses and examining certain documents the court accepted the plea of guilty, and sentenced the defendant to the penalty of death.

Thereafter, the defendant filed a Motion for New Trial, Motion for additional counsel, Motion to vacate judgment, Motion in arrest of judgment, Motion to withdraw plea, renewed request for mental examination, and Motion to modify and review. On March 14, 1970, the trial court, after hearing extensive argument by the parties, overruled the respective Motions.

The first proposition asserts that the defendant was denied the right to due process of law under the Fifth and Fourteenth Amendments of the Constitution of the United States by the failure of the trial court to order an Evidentiary Hearing to determine the defendant's competency to enter a plea of guilty and its acceptance of such plea without such a hearing.

Defendant argues that because of three reports made available to the trial court, indicating that the defendant was retarded, that even though the defendant was advised of the consequences of a plea of guilty, that he could not make an intelligent, voluntary, and understanding choice in entering a plea.

We have carefully considered the entire record, including the reports relied upon by the defendant, and find nothing that would leave a reasonable doubt as to the ability of the defendant to assist in the preparation of his defense which would indicate he did not knowingly and voluntarily enter a plea of guilty to the offense charged without full knowledge of the nature and consequences of such plea. Moreover, we observe that after the attorney for the defendant was aware of the report from Central State Griffin Memorial Hospital and the State pre-sentence investigation, that no attempt was made to withdraw the

plea of guilty prior to the imposition of judgment and sentence, but indeed these reports were referred to as a basis upon which the defendant urged the court to impose a life sentence. It was not until after the trial court sentenced the defendant to death that it was first urged that the defendant did not understand the consequences of such a plea.

■ In Fesmire v. State, Okl.Cr., 456 P.2d 573, the defendant entered a plea of guilty to the offense of Murder, and was sentenced to death, the defendant raised a similar proposition. In affirming *Fesmire,* supra, we observed that the defendant's attorney was fully aware of the testimony of the psychiatrist, and yet no attempt was made to withdraw the plea of guilty prior to the imposition of the death sentence. We stated in the fourth paragraph of the Syllabus:

> "Where the defendant seeks to withdraw his plea of guilty and substitute therefor a plea of not guilty the burden is upon the defendant to show that his plea of guilty was entered through inadvertance or through ignorance, influence, or without deliberation, and that there is a defense that should be presented to the jury."

■ We are of the opinion that the trial court meticulously advised the defendant of his constitutional rights and the nature and consequences of a plea of guilty as set forth by this Court in Copenhaver v. State, Okl.Cr., 431 P.2d 669, and that the trial court made a judicial finding that the defendant knowingly and intelligently entered his plea of guilty with full knowledge of the consequences thereof. We further observe that the psychological report from Central State Griffin Memorial Hospital stated that the defendant was not mentally ill according to the laws of the State of Oklahoma, that he was capable of advising an attorney in his own defense, that he was able to distinguish between right and wrong, and that he was able to comprehend the nature and consequences of the act for which he is charged. We, thus,

conclude that the trial court did not err in denying the defendant's request for an Evidentiary Hearing to determine the defendant's competency to enter a plea of guilty, especially when such a request was raised for the first time after the pronouncement of judgment and sentence.

The next proposition contends that the defendant was denied the protection of the Eighth Amendment to the United States Constitution, as the death penalty constitutes cruel and unusual punishment under the circumstances, and the law, and said sentence was excessive. In Fesmire v. State, supra, we stated:

"Although the comparative merits of capital punishment have been presented in arguments before this Court many times, and the proponents for its abolition have argued its moral, legal, and social implications, neither this Court, nor as yet the Supreme Court of the United States, has seen fit to classify the imposition of capital punishment as being cruel and unusual and therefore in violation of the Constitution of the United States."

As to the defendant's contention that the punishment was excessive, the brutality with which the innocent child was mutilated and slain, as evidenced by the exhibits and record before us, leads us to the conclusion that the judgment and sentence entered by the trial court was proper, and not excessive.

The next proposition asserts that the Oklahoma death statute lacks prescribed standards by which the trier of facts may exercise his judgment, and is vague, arbitrary and invidiously discriminatory and, therefore, unconstitutional. This proposition has been ruled on adversely to the contention of the defendant in McGautha v. California, 400 U.S. 814, 91 S.Ct. 1454, 28 L.Ed.2d 711, where the jury imposed the death penalty. The Supreme Court of the United States held that in light of history, experience, and the limitations of human knowledge in establishing definitive standards, it is impossible to say

that leaving to the untrammeled discretion of the jury the power to pronounce life or death in capital cases violates any provision of the Constitution. The provisions of 21 O.S.1961, § 707, are as follows:

"Every person convicted of murder shall suffer death, or imprisonment at hard labor in the State penitentiary for life, at the discretion of the jury. Upon trial of an indictment for murder, the jury, if they find the defendant guilty, must designate in their verdict whether he shall be punished by death or imprisonment for life at hard labor, and the judgment of the court shall be in accordance therewith. But upon a plea of guilty the court shall determine the same."

It is apparent from even the most cursory examination of the above statute that a judge sentencing a defendant on a plea of guilty is vested with the same power and authority to impose judgment and sentence as a jury possesses when they act as trier of facts; and this being true, it therefore follows that since standards are not required of a jury in fixing the death penalty, standards are not required for a judge imposing the death penalty on a plea of guilty.

The final proposition asserts that the trial court erred in denying the defendant's request to withdraw his plea of guilty after the question of his competency was first raised. We have previously held, in numerous cases, that it is within the discretion of the trial judge, upon entering the plea of guilty, to allow the defendant to withdraw his plea of guilty. Gilmore v. State, Okl.Cr., 461 P.2d 991. Because of the reasoning and authority set forth by this Court in proposition one, we are of the opinion that the trial court did not abuse its discretion in denying the defendant's application to withdraw his plea of guilty.

For all the reasons above set forth, the judgment and sentence appealed from is accordingly affirmed.

This case presented a most difficult task for the Honorable Fenton R. Ramey, Dis-

trict Judge of the Seventh Judicial District, whose conduct and demeanor throughout the lengthy proceedings reflect great credit upon the Bench of Oklahoma. Judge Ramey is commended for the judicious manner in which he presided over this most difficult task.

We wish also to commend Messrs. J. L. Pazoureck and Richard M. Fogg, who were court-appointed to represent the defendant in the trial court and upon appeal, for their respective obligations to the Bar and the administration of justice, as demonstrated by their performance in the trial court and their preparation and presentation during oral argument before this Court.

The date originally appointed for the execution of the defendant, Thomas S. Menthen, having passed, pending this appeal, it is ordered, adjudged and decreed by this Court that the judgment and sentence of the District Court of Canadian County, Case No. CR–69–385, be carried out by the electrocution of the defendant, Thomas S. Menthen, by the Warden of the State Penitentiary at McAlester, Oklahoma, on Friday, January 7, 1972.

BRETT, J., concurs.